In re AMERICAN CONTINENTAL COR-PORATION/LINCOLN SAVINGS AND LOAN SECURITIES LITIGATION,

FIRST BAPTIST CHURCH OF SANTA ANA, et al., Plaintiffs–Appellees,

v.

Charles H. KEATING, Jr., Defendant,

and

First Interstate Bank of California, as Trustee of First Executive Corporation Indemnification Trust, Claimant–Appellant.

No. 93–16639.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1994.

Decided March 2, 1995.

Belinda K. Orem, Paul, Hastings, Janofsky & Walker, Los Angeles, CA, for claimant-appellant.

Susan Illston, Cotchett, Illston & Pitre, Burlingame, CA, for plaintiffs-appellees.

Before: GOODWIN, O'SCANNLAIN, and RYMER, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether a corporation's transfer of stock to a trust in partial satisfaction of the corporation's obligation to fund the trust constitutes a "purchase" and a "sale" under the securities laws.

I

First Executive Corporation Trust ("Trust") seeks to participate in the enormous class action settlement stemming from the American Continental Corporation ("ACC")/Lincoln Savings and Loan Securities litigation. The class has been defined as "all persons who purchased any and all types of securities of American Continental Corporation between January 1, 1986 and April 14, 1989 including stocks and debentures, and including the Employee Stock Ownership Plan of ACC." The class definition excluded various parties, none of whom are at issue here.

First Executive Corporation ("FEC") created the Trust on December 31, 1988 to hold assets to secure contractual indemnification obligations to certain directors, officers and key employees of FEC. First Interstate Bank of California was named as Trustee ("Trustee"). In its letter brief requesting inclusion in the class, the Trustee asserted that the Trust is irrevocable and by its terms is to continue at least until January 1, 2009. According to the Trustee, the terms of the Trust required FEC to make a monetary contribution to the Trust in cash or securities. Any contribution in securities was subject to the Trustee's approval. On or about March 10, 1989, FEC transferred 56,500 shares of ACC $3.44 Exchangeable Preferred Stock to the Trust. The Trustee contends that the transfer was made in partial satisfaction of FEC's obligation to fund the trust.

The district court denied the Trust's request to participate in the class recovery on the ground that the Trust had not "pur-

chased" the stock within the meaning of the securities laws.

## II

We review de novo the district court's legal analysis of the language of the class definition. *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir.1989).[1] We examine whether the FEC Trust "purchased" the ACC stock against the backdrop of the federal securities laws which provide the basis for the class action.

Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder make unlawful certain fraudulent devices in connection with the purchase and sale of any security. Courts have generally recognized that this "purchase and sale" requirement should be read flexibly in order to effect the securities laws' remedial purposes. *Madison Consultants v. FDIC*, 710 F.2d 57, 61 (2d Cir.1983); *Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787, 798 (2d Cir.1969), *cert. denied*, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970), *rev'd in part*, 490 F.2d 332 (2d Cir.1973); *Vine v. Beneficial Fin. Co.*, 374 F.2d 627, 634 (2d Cir.) (citing cases that "indicate receptivity on different facts to a broad construction of 'sale' under the Act and the Rule"), *cert. denied*, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967).

Although we find no case with facts directly on point, we take guidance from the various transactions that have been held to constitute a purchase and sale. For instance, in *Rubin v. United States*, 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981), the Supreme Court held that a pledge of stock to a bank as collateral for a loan constituted a "sale" for purposes of Section 2(3) of the Securities Act of 1933.[2] The *Rubin* Court reasoned that

> the economic considerations and realities present when a lender parts with value and accepts securities as collateral security for a loan are similar in important respects to the risk an investor undertakes when purchasing shares. Both are relying on the value of the securities themselves, and both must be able to depend on the representations made by the transferor of the securities....

*Id.* 449 U.S. at 431, 101 S.Ct. at 702.

Accordingly, this court has applied *Rubin* and *Weaver* to hold that a pledge of securities to secure a margin brokerage account constituted a "purchase and sale" for the purpose of Section 10(b) and Rule 10b–5. *United States v. Kendrick*, 692 F.2d 1262, 1265 (9th Cir.1982), *cert. denied*, 461 U.S. 914, 103 S.Ct. 1892, 77 L.Ed.2d 282 (1983). *See also Harmsen v. Smith*, 693 F.2d 932, 947 (9th Cir.1982), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983).

Likewise, in other situations, courts have generally looked to the substance of the transaction rather than to its form in determining whether a purchase and sale has occurred. *Condon v. Richardson*, 275 F.Supp. 943, 948 (S.D.Ill.1967), *rev'd on other grounds*, 411 F.2d 489 (7th Cir.1969). Accordingly, the purchase and sale requirement has been held satisfied in a transaction involving an exchange of securities during a merger or consolidation of corporations. *SEC v. National Sec. Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). Courts have also held that so-called forced sales satisfy the purchase and sale requirement. For example, in *Vine v. Beneficial Fin. Co.*, 374 F.2d 627 (2d Cir.1967), the Second Circuit held that a minority shareholder in a "short form" merger[3] is a "seller" because

---

1. In their brief, appellees challenged our jurisdiction, claiming that the district court's July 6, 1993 order did not constitute a final order necessary for appellate jurisdiction. However, at oral argument, appellees conceded that jurisdiction was proper because, subsequent to the Trustee's appeal, the district court issued a final order and judgment. *See Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 680–81 (9th Cir.1980).

2. In *Marine Bank v. Weaver*, 455 U.S. 551, 554 n. 2, 102 S.Ct. 1220, 1222 n. 2, 71 L.Ed.2d 409 (1982), the Court noted that its holding in *Rubin* also applied to a pledge forming the basis of a fraud claim under § 10(b) of the Securities Exchange Act of 1934.

3. A short form merger is a merger whereby a corporation owning 95% or more of the shares of another corporation can merge into the other

he can only obtain cash for his shares. *Id.* at 633–35. Finally, the First Circuit found a "sale" when a broker who had failed to interest a customer in buying a controlling share in a closed corporation borrowed money from the customer on false representations, giving him a 90–day note and stating that for the favor, the broker would give the customer one-half of the shares that he would receive when the corporation went public. *Lawrence v. SEC,* 398 F.2d 276, 280 (1st Cir.1968). The court observed that "[t]he transaction in this case was not dissimilar to the obtaining of loans and services accompanied by commitments to share in future profits of mining and timber operations" that previously had been characterized as sales. *Id.* at 280. In sum, courts interpreting the purchase and sale requirement have generally been guided by the principle that "[t]he anti-fraud goals of the Rule should not be frustrated by the presence of 'novel or atypical transactions.'" *Madison Consultants,* 710 F.2d at 61 (quoting *Crane,* 419 F.2d at 798).

■ Assuming the truth of the facts the Trustee alleged in its letter brief to the district court, the transaction at issue in this case is far more obviously a purchase and sale than the transactions in the cases summarized above. The Trustee has alleged that FEC was contractually required to fund the Trust with either cash or securities. In partial satisfaction of that contractual obligation, FEC transferred 56,500 shares of stock to the Trust. The transfer of securities in exchange for a contractual obligation would seem to fit the prototypical definitions of purchase and sale.

However, the district court, while acknowledging that pledges constitute "sales" within the scope of the securities laws, found that "the Trust stands in no better position than the ACC ESOP." The court was referring to the prior request by the ACC Employee Stock Ownership Plan ("ESOP") to participate in the class recovery. *In re American Continental Corp./Lincoln Sav. and Loan Sec. Litig.,* [1993 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 97,656 (D.Ariz.1992). In that case, the ESOP had borrowed money and used that money to buy ACC common

stock in 1985 (before the class period). *Id.* at 97,038. After the purchase, these securities were deposited into a "suspense account." *Id.* As the ESOP repaid the borrowed money, the securities were released from the "suspense account" and allocated to eligible ESOP Participants. *Id.* By the end of the class period, all of the shares had been allocated to the ESOP Participants. *Id.* ACC argued that the Participants should share in the class recovery because the allocation to the Participants from the suspense account was a purchase. *Id.* at 97,039.

The district court rejected that argument, finding that "the allocation of shares to beneficiaries is not a 'purchase' within the definition of the class." *Id.* The court emphasized that the allocation of stock to the Participants did not involve a "purchase decision." The court reasoned:

> when the ESOP purchased the ACC shares in 1985, it did so at 1985 market prices and on information that was available in 1985. The ESOP was only defrauded or not defrauded at that time. No investment decision was made, no market price was employed and no fraud of the kind alleged in the class securities case could have occurred when the shares were allocated from the "suspense account".... Additionally, no "purchase decision" was made by the employee.

*Id.*

The district court did not further explain the logic of its analogy between the ACC ESOP and the Trust, but assuming its ESOP analysis was viable, we must conclude that there is little similarity between the two. For example, after the ESOP originally purchased the stock in 1985, the subsequent transfer of the stock to the Participants occurred automatically upon repayment of the borrowed money. Here, by contrast, although FEC originally purchased the stock prior to the class period, the stock did not automatically go into the Trust. The transfer to the Trust was an independent transaction that occurred during the class period. For this reason, the transaction at issue here

without the consent of the remaining shareholders.

is more nearly analogous to the ESOP's original acquisition of the stock, a transaction that the district court conceded to be a "purchase." *Id.*

Further, unlike the ESOP Participants, the Trust seemed to make a "purchase decision." *See also Rubin,* 449 U.S. at 431, 101 S.Ct. at 702. According to the Trustee, FEC could either fund the Trust with cash or securities, and if it chose to offer securities, the securities were subject to the Trustee's approval. Thus, the Trustee claims that, when presented with the stock, it relied on the integrity of the market in valuing the deposit of ACC stock and establishing the book value of the ACC stock for purposes of ascertaining FEC's funding obligations under the Trust Agreement. Moreover, the Trustee claims to have accepted and approved the deposit of the ACC securities on the belief that the stock had the actual market value reflected by the "bid" and "ask" prices in the market place. These facts indicate that the Trustee, like the lenders in the pledge cases, made a purchase decision by relying on the value of the securities when deciding to accept the ACC stock.

On the facts before us, we conclude that FEC's transfer of stock to the Trust constituted a purchase and sale for the purposes of the securities laws and the class definition. We emphasize, however, the narrowness of our holding. We offer no opinion as to the accuracy of the Trustee's factual allegations, nor do we consider whether there are other considerations that would prevent the Trust from participating in the class settlement. We hold only that a corporation's transfer of stock to a trust in partial satisfaction of the corporation's obligation to fund that trust satisfies the purchase and sale requirement of the securities laws.

REVERSED and REMANDED.

RYMER, Circuit Judge, dissenting:

I dissent, because the majority answers a question of law when I think the question is one of fact. As I read the district court's order, the court was making a *factual* determination based on the record before it that the trustee's claims do not fall within the class definition. The court acknowledged that the law which the majority's opinion lays out is the correct legal standard for purposes of the securities laws, but that isn't the issue it faced; rather, the issue was whether the Trustee's acquisition of the shares it held entitled it to participation in the class recovery. Participation was limited to actual purchases as compared with transfers, roll-overs or cash-outs. The court found that the ACC "shares were not acquired in a manner or at a time that they are logically a part of this case." As Judge Bilby had lived with this litigation for years, and knew what the common proof for the class was, I cannot say that he clearly erred.

The original claim filed by the trustee asserted that First Executive Capital purchased 91,500 shares of $3.44 Exchangeable Preferred Stock on February 5, 1988, during the class period. However, that claim was withdrawn and an amended Proof of Claim was filed which acknowledged that the stock was purchased before January 1, 1986, when the class period started. A portion of that stock, some 56,500 shares, was transferred from First Executive Capital into the Trust on March 10, 1989.

The claimant bears the burden of proving that it should participate in the class recovery. The trustee conceded at argument that there is nothing in the record other than a "bare assertion" about the nature of the transfer. There is no indication of any exchange for value, or that any kind of investment decision was made. The district court's findings that the stock was purchased prior to the class period, and that the Trust gave nothing of value for the shares transferred during the period, are fully supported. Therefore, I would affirm.