[No. 78128-1.   En Banc.]
Argued November 14, 2006.     Decided March 22, 2007.

CLARK E. KINNEY ET AL., *Respondents*, v. KENNETH B. COOK, *Petitioner*.

838

*Lawrence R. Small* and *Erin A. Jacobson* (of *Paine Hamblen Coffin Brooke & Miller, LLP*) and *John D. Munding*, for petitioner.

*Maris Baltins* and *Tamara W. Murock* (of *Baltins & Murock, PS*), for respondents.

¶1 CHAMBERS, J. — Clark E. Kinney and Barbara E. Kinney, a/k/a Bobbi Kinney, made a payment on a promissory note they had signed seven years earlier. The note was secured with stock in a business owned by the parties to the note. The Kinneys claim the holder of the note, Kenneth B. Cook, wrongfully induced their payment and that this was a violation of The Securities Act of Washington (Act), chapter 21.20 RCW. We conclude under the particular facts of this case that the payment on the note was not a sale, offer to sell, or disposition of a security, and therefore the Act does not apply. We reverse the Court of Appeals and reinstate the trial court's order of dismissal.

## FACTS

¶2 The details of the transaction underlying this case are complex and hopefully unique. The Kinneys together with Cook formed Spokane Freightliner, Inc., in 1993.[1] The corporation sold and serviced heavy duty trucks. The Kinneys contributed $225,000 in exchange for 50,000 shares of the corporation's stock; Cook contributed and received the same. The Kinneys' contribution was made possible by a loan from Cook. In exchange for the loan, the Kinneys signed and delivered to Cook a promissory note requiring payment of $225,000 with an eight percent per annum interest to begin accruing in 1994. In addition to the note, the Kinneys signed an agreement pledging their shares of stock as collateral for the loan.

¶3 Several years passed until, in February 1997, the Kinneys decided to sell their stock back to Cook. On

---

[1] The facts are taken from the Kinneys' complaint for damages. We are evaluating Cook's motion to dismiss this complaint, and as such we presume the truthfulness of its allegations. *Tenore v. AT&T Wireless Servs.*, 136 Wn.2d 322, 329-30, 962 P.2d 104 (1998).

February 26, 1997, the parties signed a memorandum of understanding canceling the promissory note and stock pledge agreement in exchange for a transfer of the Kinneys' 50,000 shares to Cook. Almost a year later, the Kinneys sued Cook, alleging a violation of the Act. The Kinneys claimed Cook misrepresented the financial condition of the company and the fair market value of the stock. A jury agreed, and on July 11, 2000, following the jury verdict, a judgment was entered which rescinded the February sale and reinstated the promissory note.

¶4 The court ordered Cook to "return to [the Kinneys] 50,000 shares of Spokane Freightliner, Inc. common stock" and ordered the Kinneys "[i]n exchange [for the stock]" to "return to Spokane Freightliner, Inc. all consideration paid to them for the 50,000 shares of common stock." Clerk's Papers (CP) at 111. The Kinneys were also ordered to "return to Kenneth B. Cook . . . the promissory note dated December 31, 1993 . . . which is hereby reinstated." *Id.* In addition, the court ordered "reinstatement of the Pledge Agreement" and "reinstatement of [the Kinneys] as guarantors of the debts of Spokane Freightliner, Inc." CP at 111-12. In short, the parties were placed in the position they were in before the 1997 sale: the Kinneys reacquired their stock and resumed liability for the promissory note and the debts of the corporation.

¶5 In January 2000, approximately six months before the jury verdict, and while Cook had exclusive control of Spokane Freightliner, Inc., he authorized the corporation to guarantee a $4.5 million loan made by Mercedes Benz Credit Corporation to Select Credit & Leasing, LLC, a limited liability company Cook owned.[2] Cook signed an agreement guaranteeing the loan six months before the judgment and did not inform the Kinneys.

¶6 Following judgment, Cook demanded payment on the recently reinstated promissory note and, on July 26, 2000, the Kinneys paid Cook $266,534.06. Two days later, the

---

[2] The record is unclear as to whether there are any other connections between Spokane Freightliner, Inc., and Select Credit & Leasing, LLC.

Kinneys received the stock certificate showing their ownership. At this time, the Kinneys were unaware that the corporation had guaranteed the loan made to Cook's limited liability company. On August 4, 2000, Cook demanded the Kinneys comply with the portion of the court order making them liable for the corporation's debts by signing a personal guaranty of every loan it had made. The Kinneys were still unaware that the $4.5 million loan to Cook's limited liability company was among the loans agreed.

¶7 Over a year later, Cook, as a secured creditor of Spokane Freightliner, Inc., filed an involuntary chapter 11 bankruptcy petition. On August 15, 2001, the Kinneys first became aware of the Mercedes Benz Credit Corporation loan guaranty when it was disclosed in bankruptcy papers filed by Cook. On April 30, 2003, the Kinneys filed suit in Spokane County Superior Court, claiming Cook violated the Act. They claimed:

> Without knowledge of the $4,500,000 loan guarantee made by Cook, on July 26, 2000, plaintiffs repurchased their 50% interest in the Corporation by paying $266,534.06 to defendant Cook in satisfaction of the Promissory Note.
>
> In return, on or about July 28, 2000, plaintiffs received a stock certificate for 50,000 shares in the Corporation.

CP at 6. Cook moved to dismiss the Kinneys' claim under CR 12(b)(6), arguing they failed to state a claim upon which relief may be granted. Cook argued the note evidenced a commercial loan and was not a security and that the payment of the note was not a sale. Cook also contends he was not a "seller" of a security in 2000, even if a sale occurred. The trial court agreed that the note was not a security, that payment of the note was not a sale, and dismissed the Kinneys' claim. The Court of Appeals reversed, on the ground that the "broad definitions" of securities and sales under the Act, combined with their "accommodating attitude toward securities fraud victims," made dismissal inappropriate. *Kinney v. Cook*, 130 Wn. App. 436, 445, 123 P.3d 508 (2005). We granted review. *Kinney v. Cook*, 157 Wn.2d 1021, 142 P.3d 608 (2006).

## ANALYSIS

¶8 A trial court's ruling to dismiss a claim under CR 12(b)(6) is reviewed de novo. *Tenore v. AT&T Wireless Servs.*, 136 Wn.2d 322, 329-30, 962 P.2d 104 (1998). Dismissal is warranted only if the court concludes, beyond a reasonable doubt, the plaintiff cannot prove "any set of facts which would justify recovery." *Id.* at 330 (citing *Hoffer v. State*, 110 Wn.2d 415, 420, 755 P.2d 781 (1988)). The court presumes all facts alleged in the plaintiff's complaint are true and may consider hypothetical facts supporting the plaintiff's claims. *Id.* A motion to dismiss is granted " 'sparingly and with care' " and, as a practical matter, " 'only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.' " *Hoffer*, 110 Wn.2d at 420 (internal quotation marks omitted) (quoting *Orwick v. City of Seattle*, 103 Wn.2d 249, 254, 692 P.2d 793 (1984); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 604 (1969)).

¶9 The Kinneys allege Cook violated the Act by committing fraud or other dishonest acts in connection with the purchase and sale of securities. *See* RCW 21.20.010.[3] The statute has two essential elements: (1) a fraudulent or deceitful act committed (2) in "connection with the offer, sale or purchase of any security." *Id.* The complaint survives the motion to dismiss on the first prong. The Kinneys allege Cook failed to inform them that Cook had burdened the corporation with a multimillion dollar debt. We presume, for purposes of this CR 12(b)(6) motion, that this

---

[3] It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

(1) To employ any device, scheme, or artifice to defraud;

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

RCW 21.20.010.

nondisclosure occurred. *Hoffer*, 110 Wn.2d at 420. The alleged omission is, at least conceivably, a violation of RCW 21.20.010(2). *See Hines v. Data Line Sys., Inc.*, 114 Wn.2d 127, 787 P.2d 8 (1990) (defendants found liable for securities fraud for failure to disclose the poor health condition of a key company officer). No more is needed to survive a CR 12(b)(6) motion to dismiss on this element.

¶10 The second prong, the connection between the fraudulent act and an offer, sale, or purchase of a security, is at the heart of the present dispute. Cook contends he neither sold nor bought a security and thus the alleged bad acts could not be in connection with the purchase or sale of a security. Fraudulent or not, his actions would be beyond the reach of the Act. The Kinneys disagree, claiming the July 2000 transaction was a purchase or sale of a security. The Kinneys argue that Cook's demand for payment on the note, and the Kinneys compliance with that demand, was a sale. Failure to pay the note for which the stock was collateral, they explain, would have resulted in losing the stock.

¶11 The Act defines a sale to include "every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value." RCW 21.20.005(10). Washington courts have not examined the definition of a sale under the Act. But federal case law gives us some useful guidance. The Act "is patterned after and restates in substantial part the language of the federal Securities Exchange Act of 1934[, 15 U.S.C. § 78a]." *Clausing v. DeHart*, 83 Wn.2d 70, 72, 515 P.2d 982 (1973). Furthermore, our state legislature directs us to interpret the Act to promote uniformity with federal securities law and the securities laws of other states. RCW 21.20.900 ("This chapter shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it and to coordinate the interpretation and administration of this chapter with the related federal regulation.").

¶12 Turning to federal law, we observe that the terms "purchase" and "sale" are not, under federal law, limited to

their common law meanings. *Northland Capital Corp. v. Silver*, 236 U.S. App. D.C. 390, 735 F.2d 1421, 1427 (1984). Federal courts employ a context-sensitive, flexible approach because " '[t]he anti-fraud goals of the Rule should not be frustrated by the presence of novel or atypical transactions.' " *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 49 F.3d 541, 544 (9th Cir. 1995) (internal quotation marks omitted) (quoting *Madison Consultants v. Fed. Deposit Ins. Corp.*, 710 F.2d 57, 61 (2d Cir. 1983)).

¶13 However, federal definitions are not without limits. The District of Columbia Circuit described the core feature of a sale, for purposes of the federal Securities Exchange Act of 1934, as mutual assent by the parties to the transaction: "A bedrock requirement for the formation of any contract or bargain . . . constituting a purchase or sale, is that the putative purchaser and seller come to a meeting of the minds." *Northland Capital*, 735 F.2d at 1427.

¶14 Our examination does not end there. The Washington Act is unique; special emphasis is placed on protecting investors from fraudulent schemes. *Hoffer v. State*, 113 Wn.2d 148, 152, 776 P.2d 963 (1989) ("[The Act] has a different purpose than the federal statute, in that it endeavors to protect investors, not just the integrity of the marketplace."). To accomplish this purpose, the Act is interpreted broadly. *Id.* (citing *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 125-26, 744 P.2d 1032 (1987)). However, this special emphasis on investor protection does not warrant undermining the "bedrock feature" of a "sale." *Northland Capital*, 735 F.2d at 1427. Absent a sale, or offer to sell, there is no investment and thus no investors to protect. At a minimum, a sale includes a mutual agreement to exchange a security. An offer to sell requires a unilateral intent to exchange a security.

¶15 The Kinneys allege that their payment on the note on July 26, 2000, was either a sale, response to an offer to sell, or a disposition of a security within the meaning of RCW 21.20.005 and .010. They explain that, in July 2000, they made the investment decision to pay Cook approxi-

mately $266,534.06 for a 50 percent interest in the company. In essence, they argue that if they had not paid off the note, they would have lost the stock. They reason that because they paid money to *keep* the stock, the payment on the note was in the nature of a *purchase* of stock. We disagree.

¶16 The earlier judgment rescinded the 1997 stock sale and restored the parties to their previous positions. The Kinneys paid Cook because they were bound by the terms of a promissory note they signed in 1993, not as consideration for an investment made in 2000. As a result of the judgment, they owned the stock *before* they made the payment. The payment satisfied a debt the Kinneys were legally obligated to pay as a result of a litigation they initiated and a judgment they had helped craft; there was no offer, no contract, no bargain, and no sale of a security. Nor was the payment of the note a purchase or sale of the note itself. The alleged fraud inducing this payment was thus not in connection with the *sale* or offer to sell a security. To hold otherwise would be to conclude that every payment on a note secured by a security or interest in a security for value would trigger duties by the payee under RCW 21.20.010. We do not believe the legislature intended its protections for the sale of securities to extend so broadly.

¶17 The only other aspect of the July 2000 transaction that could be a sale is the judicial rescission of the 1997 sale. However, even if we hold the judicial rescission was a sale, it does not follow that Cook was the seller. We have expanded seller liability beyond the "strict-privity" standard to include those whose acts are a "substantial contributive factor" in a sales transaction. *Haberman*, 109 Wn.2d at 131. Yet even under this more expansive definition, Cook was not a seller. Rather than encouraging the judicial rescission, Cook fought it. The rescission was the result of a judgment entered *against* him.

¶18 Because we find that there was no sale or offer to sell a security, we find it unnecessary to reach Cook's argument that the note was not a security.[4]

CONCLUSION

¶19 Despite the forgiving standard of a CR 12(b)(6) motion, we conclude that, upon the record before us, the payment by the Kinneys on July 26, 2000, on a promissory note signed by them seven years earlier did not implicate a sale, offer to sell, or disposition of a security as contemplated by RCW 21.20.010. We are mindful that our securities Act is intended to protect investors and that the antifraud goals of the Act should not be frustrated merely because a scheme uses novel or atypical transactions. We limit our holding to the unique facts and contentions of this case. The plaintiffs may pursue any other remedies that may be available to them under the law, but the conduct they allege, no matter how egregious, is not within the scope of the Act. We reverse the Court of Appeals and reinstate the trial court's order of dismissal.

ALEXANDER, C.J., and C. JOHNSON, SANDERS, BRIDGE, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

¶20 MADSEN, J. (dissenting) — At issue is whether Clark E. and Barbara E. Kinney's complaint states a colorable claim for violation of The Securities Act of Washington, chapter 21.20 RCW.

¶21 The purpose of the securities act is " 'to regulate investments, in whatever form they are made and by whatever name they are called.' " *Cellular Eng'g, Ltd. v. O'Neill*, 118 Wn.2d 16, 25, 820 P.2d 941 (1991) (emphasis omitted) (quoting *Reves v. Ernst & Young*, 494 U.S. 56, 61, 110 S. Ct. 945, 108 L. Ed. 2d 47 (1990)). It is a violation of the act for any person, "in connection with the offer, sale or

___

[4] We do not reach the Court of Appeals conclusion that this commercial note could be a security for the purposes of a CR 12(b)(6) motion.

purchase of any security, directly or indirectly," to "employ any device, scheme, or artifice to defraud"; to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading"; or to "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." RCW 21.20.010-(1)-(3). Anyone "who offers or sells a security" in violation of the act is civilly liable to the person who bought the security. RCW 21.20.430(1).

¶22 A "sale" of a security is broadly defined, encompassing "every contract of sale of, contract to sell, *or disposition of*, a security or interest in a security for value." RCW 21.20.005(10) (emphasis added). An "offer" "includes *every* attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value." *Id.* (emphasis added). And *any* security *given or delivered* with "*any purchase of . . . any other thing* is considered to constitute part of the subject of the purchase and to have been offered and sold for value." *Id.* (emphasis added).

¶23 "Security" is also expansively defined by a long and detailed list of items that constitute a "security," including "any note." RCW 21.20.005(12)(a). This definition " 'embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits.' " *Cellular Eng'g*, 118 Wn.2d at 24 (quoting *Sec. & Exch. Comm'n v. W.J. Howey Co.*, 328 U.S. 293, 299, 66 S. Ct. 1100, 90 L. Ed. 1244 (1946)). And in determining whether a transaction constitutes the sale of a security, substance prevails over form, consistent with the purpose of the act to protect the investing public.

¶24 The trial court here granted Kenneth Cook's CR 12(b)(6) motion. A motion to dismiss under CR 12(b)(6) assumes the truth of the factual allegations of the complaint. *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749,

755, 881 P.2d 216 (1994). The motion should be granted only if it appears beyond a reasonable doubt that no facts exist, including hypothetical facts, that would justify recovery. *Id*. A CR 12(b)(6) motion is to be granted sparingly and only in the unusual case in which the complaint reveals on its face an insuperable bar to relief. *Id*. A trial court's ruling on a CR 12(b)(6) motion is reviewed de novo as a matter of law. *Id*.

¶25 Applying the generous standard required under CR 12(b)(6), the broad provisions of the securities act, as well as the liberal construction placed on the securities act for the protection of investors, *see Cellular Eng'g*, 118 Wn.2d at 23, summary judgment was improper in this case. Securities are inextricably involved in these parties' transaction. The original loan Cook made to the Kinneys was for the purpose of forming Spokane Freightliner, Inc., the corporation that issued the stock here. The Kinneys gave Cook a promissory note for the loan amount, securing the note with an agreement pledging their shares to Cook as collateral. Only when they finally repaid the loan did they receive stock certificates. As mentioned above, a "sale" includes any security or interest in a security *"given or delivered"* with *"any purchase of . . . any other thing."* RCW 21.20.005(10) (emphasis added). Moreover, every note is "presumed" to be a security, with the burden on the defendant to prove otherwise. *Douglass v. Stanger*, 101 Wn. App. 243, 252, 2 P.3d 998 (2000).

¶26 Given the intent of the securities law to protect investors, the blatant conduct by Cook, and the injury suffered by the Kinneys, I would hold that the Kinneys' complaint survives this motion to dismiss for failure to state a claim.