# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MATTHEW P. BERGMAN,<br><br>Appellant,<br><br>v.<br><br>ALASKA AIRLINES, INC.,<br><br>Respondent. | No. 80704-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

APPELWICK, J. — Bergman appeals the trial court's order granting Alaska Airlines's CR 12(b)(6) motion to dismiss. He argues he pleaded valid state law claims not preempted by the Airline Deregulation Act.[1] Further, he argues the court erred by considering materials outside of the pleadings without converting to a motion for summary judgment. We affirm.

## FACTS

In 1997, Matthew Bergman enrolled in the Alaska Airlines Mileage Program (Mileage Plan).[2] Mileage Plan members may use their accumulated miles to purchase airplane tickets and upgrades on Alaska Airlines Inc. (Alaska) flights. The transactions are governed by Mileage Plan Terms and Conditions (Terms and

---

[1] 49 U.S.C. § 41713(b)(1).

[2] Many of these facts are taken from Bergman's complaint. We are evaluating a motion to dismiss this complaint, and as such presume the truthfulness of its allegations. Kinney v. Cook, 159 Wn.2d 837, 839, 154 P.3d 206 (2007).

Conditions). Alaska allows its customers to exchange their miles for air passage on its partner carriers.

Since 1998, Bergman has also used several "Alaska Airlines Visa" credit cards. Alaska Airlines Visa cardholders receive Mileage Plan credit for purchases made on their cards.

On August 1, 2019, Bergman filed his original complaint against Alaska for violations of the Washington Consumer Protection Act (CPA), chapter 19.86 RCW. The CPA provides that it is unlawful for a company to engage in "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. Bergman alleged that Alaska did not advise customers that Mileage Plan seat availability was based not just on the "physical availability" of seats, but also on artificial limits set with partner carriers.

Alaska moved to dismiss under CR 12(b)(6) arguing the Airline Deregulation Act (ADA) preempted the CPA claim. 49 U.S.C. § 41713(b)(1).

Bergman filed a motion to amend its complaint. Alaska opposed Bergman's motion. The trial court filed an order permitting the amendment and stated it would convert Alaska's opposition to amendment into a summary judgment motion.

Bergman's amended complaint sought damages for breach of contract, promissory estoppel, and violation of the CPA. It also referenced the Visa credit card program, alleging Alaska's "practice of advertising its Mileage Plan to induce consumers to enroll in its Visa bankcard program without advising its customers that [a]ward seats are not awarded on a space available basis but rather artificially limited" was "unfair and deceptive."

2

Bergman filed a response to Alaska's pending CR 12(b)(6) motion, arguing dismissal prior to discovery is disfavored both under CR 12(b)(6) and under CR 56 where discovery is still necessary. Bergman had previously filed a discovery request that had resulted in several motions from both parties. The parties agreed to postpone adjudication on discovery until after Alaska's motion to dismiss was heard.

The court held a hearing on Alaska's CR 12(b)(6) motion. It clarified that it "was not in any way trying to convert a motion to dismiss into a summary judgment." Because the Terms and Conditions were incorporated in Bergman's complaint, it did not find it necessary to convert from a CR 12(b)(6) motion.

The court found that language in the Terms and Conditions stating "award-travel space is limited and subject to certain restrictions" precluded Bergman's contract claim.

The court disagreed with Bergman that his inclusion of the Alaska Airlines Visa credit card in his amended complaint changed the preemption analysis. Because Bergman was suing Alaska and not the card provider, Bank of America Corporation, the court reasoned the credit card still related to "rates, routes and services." The court granted Alaska Airline's motion to dismiss all claims.

Bergman appeals.

## DISCUSSION

Bergman makes two arguments. Bergman alleges the trial court erred by considering materials outside the pleadings. He further argues the trial court erred by dismissing his complaint under CR 12(b)(6).

3

I. Consideration of Materials Outside the Pleadings

Bergman argues that the trial court improperly considered the Terms and Conditions outside of the pleadings without converting the motion to summary judgment.

A trial court may take judicial notice of public documents where the authenticity of those documents cannot be reasonably disputed. Jackson v. Quality Loan Serv. Corp., 186 Wn. App. 838, 844, 347 P.3d 487 (2015).

Where a plaintiff asserts allegations related to specific documents but does not physically attach those documents to the complaint, the documents may be considered in ruling on a CR 12(b)(6) motion for judgment on the pleadings. Id.

Bergman does not allege the Terms and Conditions were inauthentic. The Terms and Conditions were at the center of Bergman's complaint, and incorporated by reference throughout. As the Terms and Conditions were incorporated in Bergman's complaint, the trial court correctly reasoned that it did not need to convert to a motion for summary judgment.

We conclude the trial court did not improperly consider materials outside the pleadings without converting the motion to a summary judgment motion.

II. CR 12(b)(6) Motion to Dismiss

Bergman further argues the trial court erred in dismissing his claims as preempted by the ADA. He argues the allegations, if accepted as true, establish cognizable, nonpreempted breach of contract, promissory estoppel, and CPA claims.

4

We review a trial court's ruling to dismiss a claim under CR 12(b)(6) de novo. Kinney v. Cook, 159 Wn.2d 837, 842, 154 P.3d 206 (2007). Dismissal is warranted only if the court concludes, beyond a reasonable doubt, the plaintiff cannot prove any set of facts that would justify recovery. Id. The court presumes all facts alleged in the plaintiff's complaint are true and may consider hypothetical facts supporting the plaintiff's claims. Id.

By enacting the ADA, Congress deregulated domestic air transportation. Howell v. Alaska Airlines, Inc., 99 Wn. App. 646, 649, 994 P.2d 901 (2000). The ADA includes a preemption provision designed to ensure that the States would not undo federal deregulation with regulation of their own. Id.

The ADA provides that a State "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). Actions having a connection with, or reference to, airline rates, routes, or services are preempted under the ADA. Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378-79, 112 S. Ct. 2031, 2033, 119 L. Ed. 2d 157 (1992) (analyzing the preemption provision of 49 U.S.C. app. § 1305(a)(1), recodified as 49 U.S.C. § 41713(b)(1)). In Morales, the Court held State regulations on airline fare advertising were preempted by the ADA as related to airline rates. 504 U.S. at 387, 391.

The Supreme Court again addressed the ADA preemption provision in American Airlines, Inc., v. Wolens, 513 U.S. 219, 226, 115 S. Ct. 817, 130 L. Ed. 2d 715 (1995). The plaintiffs in Wolens were members of American Airlines's

5

frequent flyer program challenging retroactive changes to the program such as the introduction of blackout dates. Id. at 222, 225. The Court held that

> Plaintiffs' claims relate to "rates," i.e., American's charges in the form of mileage credits for free tickets and upgrades, and to "services," i.e., access to flights and class-of-service upgrades unlimited by retrospectively applied capacity controls and blackout dates. But the ADA's preemption clause contains other words in need of interpretation, specifically, the words "enact or enforce any law" in the instruction: "[N]o State . . . shall enact or enforce any law . . . relating to [air carrier] rates, routes, or services."

Id. at 226 (alterations in original) (quoting 49 U.S.C. app. § 1305(a)(1)).

The Court held that the ADA permits state-law-based court adjudication of routine breach of contract claims where an airline breaches "its own, self-imposed undertaking." Id. at 228, 232. It found that in breach of contract actions, the ADA's preemption clause confines courts to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." Id. at 232-33.

In Northwest, Inc., v. Ginsberg, 572 U.S. 273, 276, 289, 134 S. Ct. 1422, 188 L. Ed. 2d (2014), the Court held that the ADA preempts state common law claims involving airline frequent flyer plans.

This court addressed both Morales and Wolens in Howell. 99 Wn. App. at 652. In Howell, the appellants sought refund of unused, and explicitly nonrefundable, tickets on a number of contract law grounds. Id. at 647. The appellants also claimed that by refusing refunds, Alaska violated the CPA. Id. at 648.

6

This court concluded that the appellants' claims were barred by the ADA. Id. at 652. It reasoned the appellants did not seek to enforce a contract according to its terms, but instead sought to have Alaska's refusal to refund explicitly nonrefundable tickets "declared unlawful by application of state laws and policies external to the parties' agreement." Id. at 652-53.

Bergman's argument that his inclusion of Visa credit card services changes the preemption analysis is unpersuasive. His amended complaint linked his Mileage Plan membership to his Alaska Airlines Visa credit card. But, his claims still primarily regard the availability of award tickets, through the use of Mileage Plan miles. As the trial court noted, Bergman is not suing Bank of America. He did not seek relief related to his credit card contract with Bank of America. Nor did he argue that participation in the credit card program altered the Mileage Plan Terms and Conditions. The credit card terms state,

> The Mileage Plan Program is offered and administered by Alaska Airlines and is not a product or program of Bank of America. All Mileage Plan Program terms and conditions apply.

The only connection Bergman made between the credit card program and his claims was his inducement to enroll in the credit card program and use his credit card based upon his understanding of the mileage program. The heart of these claims still directly concerns the Mileage Plan.

It is clear that Alaska's Mileage Plan relates to Alaska's rates, routes, and services. Similar to the explicitly nonrefundable tickets in Howell, the Terms and Conditions governing the Mileage Plan expressly provided that award space is limited and Alaska cannot ensure award seat availability. Bergman argues he

relied on Alaska's representations that international travel on partner airlines would be awarded on a "space available" basis. But, as the trial court noted, the express language of the Terms and Conditions is "limited" and "straightforward."

Bergman described his contract claim in the court below:

> [Counsel for Bergman]: As far as the breach of contract claim, if Your Honor reads the two sentences I read out as ambiguous, we prevail.· If Your Honor reads them as clear, well-defined, you know, as my colleague has described them as not providing the benefit that we've alleged, we lose.· I think the breach of contract is as straightforward as that.

The two sentences Bergman's counsel read aloud from the 2019 Terms and Conditions provided, "'Award travel space is limited and subject to certain restrictions including blackout dates and other capacity controls. Alaska Airlines cannot ensure availability of award seats on any flight, route, or date.'"[3] The language is not ambiguous. It clearly states "certain restrictions" apply, and that Alaska cannot ensure award seats to program members. This language cannot be interpreted as a specific commitment undertaken by Alaska to provide award seats and upgrades on a purely "space available" basis. Absent such a commitment, this court would be required to look to common law, state laws, and

---

[3]This language appears in the copy of the 2019 Terms and Conditions Bergman attached to the declaration of Bergman's counsel in support of his response to Alaska's motion to dismiss. Bergman also claimed in his first amended complaint that "Nowhere in its . . . Terms and Conditions does defendant Alaska Airlines, Inc., notify its customers that availability of Award seats is based not only the physical availability of an unsold seat." This claim could only be made in reference to the Terms and Conditions available to Bergman. As Bergman clearly relies on the 2019 Terms and Conditions to establish his claims, we need not reach his argument that previous versions of the Terms and Conditions were necessary to determine whether the breach occurred as pleaded. A CR 12(b)(6) order is decided on the basis of the pleadings as they exist, not as they might have been.

policies external to the parties' agreement in order to provide relief. As such, Bergman's claims fall outside the narrow exception to the ADA preemption clause laid out in Wolens.

We conclude that Bergman's claims for violation of the CPA, breach of contract, and promissory estoppel are preempted by the ADA. The trial court did not err in granting Alaska's CR 12(b)(6) motion on those grounds.

We affirm.

_Appelwick, J._

WE CONCUR:

_____   _Andrus, A.C.J._