# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| FREEDOM FOUNDATION, a Washington nonprofit organization, in the name of the STATE OF WASHINGTON, | No. 55104-7-II |
| Appellant, | |
| v. | |
| SERVICE EMPLOYEES INTERNATIONAL UNION POLITICAL EDUCATION & ACTION FUND, an IRS 527 political organization, | ORDER AMENDING OPINION TO CORRECT CAUSE NUMBER |
| Respondent. | |

The Court on its own motion amends the unpublished opinion filed on January 18, 2022, to correct the caption cause number to 55104-7-II.  We do not amend any other portion of the opinion or the result.  Accordingly, it is

**SO ORDERED.**

**PANEL:**  Jj. Cruser, Veljacic, Price

**FOR THE COURT:**

_____
PRICE, J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| FREEDOM FOUNDATION, a Washington nonprofit organization, in the name of the STATE OF WASHINGTON,<br><br>Appellant,<br><br>v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION POLITICAL EDUCATION & ACTION FUND, an IRS 527 political organization,<br><br>Respondent. | No. 55140-7-II<br><br><br>UNPUBLISHED OPINION |

PRICE, J. — Freedom Foundation is appealing the trial court's granting of Service Employees International Union Political Education and Action Fund's (SEIU PEAF) motion to dismiss Freedom Foundation's citizen's complaint brought under the Fair Campaign Practices Act (FCPA).[1]  We affirm the trial court's dismissal of the Freedom Foundation's complaint.

## FACTS[2]

SEIU PEAF is registered as an out-of-state political committee with the Washington State Public Disclosure Commission (PDC).  *Freedom Found. v. Public Disclosure Comm'n*, No.

---

[1] Ch. 42.17A. RCW.

[2] The facts of this opinion are briefly recounted from *Freedom Foundation v. Public Disclosure Commission*, No. 53889-0-II, slip op. (Wash. Ct. App. Feb. 9, 2021) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2053889-0-II%20Unpublished%20Opinion.pdf. Although the respondent here is different, this case arises from an identical set of facts and both cases arise from CR 12(b)(6) dismissals.

53889-0-II, slip op. at 2. In February 2019, Freedom Foundation filed a complaint with the PDC alleging that SEIU PEAF had failed to timely and accurately file its C5 reports[3] in violation of the FCPA. *Id.* SEIU PEAF responded to the allegations against it, conceding inadvertent errors on at least four occasions regarding its C5 reports. *Id.*

The PDC reviewed the complaint, the PDC contribution and expenditure database for SEIU PEAF activities, the C5 forms and amended C5 forms filed by SEIU PEAF, and the response to the complaint filed by SEIU PEAF. *Id.*

In May, the PDC sent a letter to Freedom Foundation responding to Freedom Foundation's complaint regarding SEIU PEAF. *Id.* The letter outlined the PDC's findings regarding Freedom Foundation's allegation and stated that the facts did not amount to an actual violation warranting further investigation. *Id.* The letter further stated that the PDC would be formally warning SEIU PEAF regarding the importance of filing timely and accurate C5 reports. *Id.* The letter concluded by stating that the PDC was dismissing Freedom Foundation's remaining allegations against SEIU PEAF. *Id.* The executive director clarified in a subsequent email to Freedom Foundation that the matter was "dismissed with a warning." Clerk's Papers (CP) at 18.

Freedom Foundation then attempted to bring a citizen's action against SEIU PEAF under the provision of the statute providing for such an action. SEIU PEAF filed a CR 12(b)(6) motion to dismiss in response to Freedom Foundation's complaint. It argued that Freedom Foundation was barred from bringing a citizen's action because the PDC had dismissed Freedom Foundation's complaint within the requisite 90 days. The trial court granted SEIU PEAF's motion to dismiss

---

[3] A C5 report is an out-of-state political committee report required under RCW 42.17A.250.

No. 55104-7-II

based on the plain language of RCW 42.17A.755 and RCW 42.17A.775. Freedom Foundation appeals.

ANALYSIS

MOTION TO DISMISS

I. LEGAL PRINCIPLES

We review a dismissal of a claim under CR 12(b)(6) de novo. *Kinney v. Cook*, 159 Wn.2d 837, 842, 154 P.3d 206 (2007). Dismissal is proper where beyond a reasonable doubt, the plaintiff cannot prove " 'any set of facts that would justify recovery.' " *Id.* (quoting *Hoffer v. State*, 110 Wn.2d 415, 420, 755 P.2d 781 (1988)).

Issues of statutory interpretation are also reviewed de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). Our goal in statutory interpretation is to "ascertain and carry out the legislature's intent." *Id.* Where a statute is unambiguous, we interpret a statute according to its plain meaning without reference to outside sources. *Id.* The plain meaning can be ascertained from the statute in its entirety along with "related statutes which disclose legislative intent about the provision in question." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002).

The FCPA was originally enacted in 1972 to promote disclosure of the financing for political campaigns. LAWS OF 1973, ch. 1. The provisions of the act are to be liberally construed to promote disclosure of campaign financing. Former RCW 42.17.010 (1975), *recodified as* RCW 42.17A.001 (LAWS OF 2010, ch. 204, § 1102).

3

In June 2018, the citizen's action portion of the FCPA was amended. LAWS OF 2018, ch. 304, § 14.[4] Under the previous version of the statute, an individual could bring a citizen's action if they gave notice to the attorney general and the attorney general did not bring an action within 45 days. Former RCW 42.17A.765(4) (2010); *Utter v. Bldg. Indus. Ass'n of Wash.*, 182 Wn.2d 398, 407, 341 P.3d 953 (2015). Under the amended 2018 version:

> (2) A citizen's action may be brought and prosecuted only if the person first has filed a complaint with the commission; and
>
> (a) The commission has not taken action authorized under RCW 42.17A.755(1) within ninety days of the complaint being filed with the commission . . . .[5]

Former RCW 42.17A.775 (2018).

The 2018 version of RCW 42.17A.775(2)(a) states that the PDC may take action on a complaint as provided for in RCW 42.17A.755(1). If the PDC takes action under this provision, the complainant is precluded from bringing a citizen's action. Former RCW 42.17A.775(2) (2018). Former RCW 42.17A.755(1) (2018) provides:

> The commission may initiate or respond to a complaint, request a technical correction, or otherwise resolve matters of compliance with this chapter, in accordance with this section. If a complaint is filed with or initiated by the commission, the commission must:
>
> (a) Dismiss the complaint or otherwise resolve the matter in accordance with subsection (2) of this section, as appropriate under the circumstances after conducting a preliminary review;
>
> (b) Initiate an investigation to determine whether an actual violation has occurred, conduct hearings, and issue and enforce an appropriate order, in accordance with chapter 34.05 RCW and subsection (3) of this section; or

---

[4] The statute was later amended again in 2019.

[5] There are additional procedural requirements provided for in the statute that are not at issue here and therefore are not provided.

(c) Refer the matter to the attorney general . . . .

We addressed the interpretation of these provisions in *Freedom Foundation v. Bethel School. Dist*rict, 14 Wn. App. 2d 75, 469 P.3d 364 (2020).[6] In *Bethel*, Freedom Foundation filed a complaint with PDC alleging that a school district had violated the FCPA. *Id.* at 79. Within 90 days of the complaint being filed, the PDC dismissed the matter finding that the evidence did not support Freedom Foundation's allegations. *Id.* Freedom Foundation then brought a citizen's complaint against the school district. *Id.* The trial court granted the school district's motion for summary judgment dismissal of Freedom Foundation's complaint. *Id.* at 78.

We affirmed the trial court, determining that the PDC's timely dismissal of Freedom Foundation's complaint precluded Freedom Foundation from brining a citizen's action. *Id.* at 83. We held that "[t]o meet RCW 42.17A.775's prerequisites for a citizen's action, the PDC *must fail to take action* within 90 days of receiving a complaint." *Id.* at 83-84 (emphasis added). We found that the PDC's dismissal of the complaint was the requisite action, as provided for in Former RCW 42.17A.755(1)(a) (2018).

II. APPLICATION

Here, we follow *Bethel* and determine that the timely dismissal with a warning by the PDC similarly precludes Freedom Foundation from bringing a citizen's action. Freedom Foundation filed a complaint with the PDC regarding SEIU PEAF on February 18, 2019. The PDC responded to that complaint on May 7, 2019, notifying Freedom Foundation that it had dismissed the matter

---

[6] SEIU PEAF argues that we are bound by *Bethel* under the principle of *stare decisis*. Although they have persuasive value, panels on the court of appeals are not bound by *stare decisis* to adhere to the decisions of other panels. *In re Pers. Restraint of Arnold*, 190 Wn.2d 136, 150, 154, 410 P.3d 1133 (2018).

with a warning. Freedom Foundation's complaint was dismissed within 90 days, thus it was precluded from bringing a citizen's action.

Although Freedom Foundation initially fails to mention *Bethel* in its opening brief, it makes several arguments about why we should not follow *Bethel* in its reply brief. Reply Br. of App. at 10-14. First, Freedom Foundation maintains that *Bethel* was wrongly decided because we incorrectly interpreted the word "action" in Former RCW 42.17A.775 (2018) to include a dismissal. Appellant's Reply Br. at 11. Freedom Foundation reasserts that a dismissal should not qualify as an action under the statute. However, because a dismissal requires an overt action by the PDC by its plain meaning, a dismissal is an action. Additionally, the statute lists dismissal as an action the PDC may take to resolve the manner. Former RCW 42.17A.755(1) (2018).

Second, Freedom Foundation argues that *Bethel* is distinguishable because, in this case, SEIU PEAF actually admitted to having committed the violations, whereas in *Bethel* the PDC found that there had not been a violation. However, our determination in *Bethel* was based solely on the fact that the PDC had dismissed the complaint. *Bethel Sch. Dist.*, 14 Wn. App. 2d at 83-84. Nothing in *Bethel* indicated that its analysis was dependent on the basis for a dismissal—such as whether there was a finding of violations or not. Thus, we find that *Bethel* is sufficiently similar to this case to be persuasive here.

Third, Freedom Foundation urges an interpretation of the statute based on its use of the word "otherwise" that would require all dismissals by the PDC to follow the process outlined in RCW 42.17A.755(2). Appellant's Initial Br. at 10-16. Since this dismissal failed to follow this process, the Freedom Foundation argues the PDC's action is invalid. The relevant portion provides:

(1) The commission may initiate or respond to a complaint, request a technical correction, *or otherwise* resolve matters of compliance with this chapter, in accordance with this section. If a complaint is filed with or initiated by the commission, the commission must:

(a) Dismiss the complaint *or otherwise* resolve the matter in accordance with subsection (2) of this section, as appropriate under the circumstances after conducting a preliminary review;

(b) Initiate an investigation to determine whether an actual violation has occurred, conduct hearings, and issue and enforce an appropriate order, in accordance with chapter 34.05 RCW and subsection (3) of this section; or

(c) Refer the matter to the attorney general, in accordance with subsection (4) of this section.

(2)(a) For complaints of remedial violations or requests for technical corrections, the commission may, by rule, delegate authority to its executive director to resolve these matters in accordance with subsection (1)(a) of this section, provided the executive director consistently applies such authority.

(b) The commission shall, by rule, develop additional processes by which a respondent may agree by stipulation to any allegations and pay a penalty subject to a schedule of violations and penalties, unless waived by the commission as provided for in this section. Any stipulation must be referred to the commission for review. If approved or modified by the commission, agreed to by the parties, and the respondent complies with all requirements set forth in the stipulation, the matter is then considered resolved and no further action or review is allowed.

Former RCW 42.17A.755 (2018) (emphasis added).

Freedom Foundation argues that the word "otherwise" contained in subsections (1) and (1)(a) should be given the same meaning in both places. It argues that under SEIU PEAF's interpretation, in its first use, "otherwise" "refer[s] to different species of the same genus," but in its second use, it means "alternatively." Appellant's Initial Br. at 11. Freedom Foundation maintains that the second "otherwise" should also be interpreted to mean "different species of the same genus." If it is given this meaning, dismissals and resolutions except for those falling under subsections (b) and (c) must follow the procedures of subsection (2)(a).

In response, SEIU PEAF argues that Freedom Foundation's interpretation fails under the last antecedent rule and comma corollary.[7] SEIU PEAF argues that the phrase in section (1)(a) that states "in accordance with subsection (2) of this section" is an antecedent to "otherwise resolve the matter," and therefore, it should modify that phrase. The phrase, according to SEIU PEAF, does not modify the word "dismiss" used in the beginning of section (1)(a). Br. of Resp't at 18. It also maintains that the comma corollary supports this argument. SEIU PEAF states that the absence of a comma prior to "in accordance with subsection (2)" indicates the intent of the drafters that the last antecedent rule apply, whereas the presence of a comma prior to the phrase "in accordance with this section" in subsection (1) demonstrates the opposite. It argues that Freedom Foundation's arguments regarding the use of "otherwise" are flawed because the word is used in both places to communicate to the reader "that the action in the preceding clause falls within the overall category announced." Br. of Resp't at 21-22.

Under Freedom Foundation's arguments, the PDC would not have authority to simply dismiss any complaint it received, as it did in *Bethel*, without first going through the procedures outlined in subsection (2)(a). Nothing in *Bethel* supports this result. Moreover, forcing the PDC to use the (2)(a) procedures for simple dismissals would lead to absurd results because the language in (2)(a) assumes a violation has been committed. Because the SEIU PEAF position is more consistent with the plain language of the FCPA, we disagree with Freedom Foundation's argument.

---

[7] "The 'last antecedent' rule provides that, unless a contrary intention appears in the statute, qualifying words and phrases refer to the last antecedent." *In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 781, 903 P.2d 443 (1995). The comma corollary provides that the presence of a comma prior to an antecedent negates the last antecedent rule. *Id.* at 781-82.

Fourth, Freedom Foundation argues that the trial court's interpretation of the statute is contrary to the statute's policy goals because it gives the PDC discretion to deal with actual violations of the FCPA. Like it did in *Bethel*, Freedom Foundation is arguing that because it believes that the legislature's amendments are contrary to the broad policies of the FCPA, we should reverse. *Bethel Sch. Dist.*, 14 Wn. App. 2d at 84. For the same reasons explained in *Bethel*, we remain unpersuaded by this argument. *Id.*

Freedom Foundation further argues that "minor violations" was not a category recognized by the 2018 amendments and, therefore, not available to the PDC in resolving its complaint. Appellant's Initial Br. at 16. Because the statute defines actual violations, remedial violations, and technical corrections but not "minor violations," the PDC, according to Freedom Foundation, lost its discretion to dismiss complaints in this manner if any level of violation occurred, other than "remedial" ones. We disagree.

Freedom Foundation reads the statute too narrowly. Consistent with the discussion above, nothing in section 755 restrains the PDC from dismissing a complaint under subsection (1)(a) without going through the steps of subsection (b), subsection (c), or the procedures of subsection (2)(a). While subsection (b) provides authority to the PDC to "initiate an investigation to determine whether an actual violation occurred," it stops short of removing the PDC's discretion to dispense with any violation, regardless of its seriousness, in any other way; this is especially true given the breadth of the 2018 definition of "actual violation." Former RCW 42.17A.005(2) ("'Actual Violation' means a violation of this chapter that is not a remedial violation or technical correction.").

9

CONCLUSION

Because the PDC took action on Freedom Foundation's complaint within 90 days, Freedom Foundation was precluded from bringing a citizen's action in this case. Accordingly, we affirm the trial court's 12(b)(6) dismissal of Freedom Foundation's complaint.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CRUSER, P.J.

VELJACIC, J.