## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LORRIE WITTIG, | No. 60100-1-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| BOB FERGUSON, ATTORNEY GENERAL OF THE STATE OF WASHINGTON, THE OFFICE OF THE ATTORNEY GENERAL, THE STATE OF WASHINGTON, | |
| Respondents. | |

CHE, J. — Lorrie Wittig appeals the trial court's order dismissing her claims against Bob Ferguson as the former Attorney General, the Washington State Office of the Attorney General, and the State of Washington (collectively, the AGO).

In a complaint, Wittig alleged that, while employed with the AGO, she requested an exemption from the AGO's COVID-19 vaccine mandate for its employees. Wittig requested the exemption based, in part, on her belief that God made her body a temple of the Holy Spirit and taking the vaccine would violate this belief. The AGO accepted Wittig's exemption request but subsequently denied her request for an accommodation and terminated her employment. Wittig sued the AGO, raising two causes of action based on claims that the AGO's actions violated Washington State Law Against Discrimination (WLAD),[1] Washington Constitution art. I, § 11, and Title VII of the Civil Rights Act of 1964 (Title VII).

---

[1] Ch. 49.60 RCW.

The AGO moved to dismiss Wittig's first amended complaint under CR 12(b)(6). The trial court granted the motion and dismissed Wittig's complaint without prejudice. When Wittig submitted a second amended complaint, the AGO moved to dismiss the second amended complaint under the same basis. The trial court granted the AGO's motion, but this time with prejudice.

Wittig argues that she sufficiently pleaded the dismissed claims. We agree and hold that Wittig's second amended complaint pleaded sufficient facts to survive a motion to dismiss at the pleading stage.

Accordingly, we reverse and remand.

FACTS[2]

In August 2021, Washington State's governor issued a proclamation prohibiting, "Any Worker from engaging in work for a State Agency after October 18, 2021 if the Worker has not been fully vaccinated against COVID-19."[3] During this time, Wittig was employed as a legal

---

[2] The AGO asks us to take judicial notice of various facts related to the COVID-19 pandemic, including the governor's proclamation and the AGO's policy mentioned below. When ruling on a motion to dismiss, courts "may take judicial notice of public documents if their authenticity cannot be reasonably disputed." *In re Est. of McCartney v. Pierce County*, 22 Wn. App. 2d 665, 677, 513 P.3d 119 (2022); *see also* ER 201. Wittig contests the AGO's request and argues that we should not take judicial notice of the facts because they are not relevant to the issue before us regarding Wittig's religious beliefs. Wittig additionally argues that the content of the sources is "'subject to reasonable dispute' and the accuracy of the content can 'reasonably be questioned'." Cor. Reply Br. of Appellant at 6 (citing to ER 201). We take judicial notice of the governor's proclamation and the AGO's policy because they are matters of public record and Wittig's dispute appears to aim not at the authenticity of the records themselves, but the efficacy of their subject matter, the vaccines, which is not before us.

assistant in the AGO. The attorney general implemented a similar vaccination requirement for the AGO.

In 2023, Wittig timely filed a complaint and then an amended complaint raising two causes of action against the AGO. In the two causes of action, Wittig alleged that the AGO had violated the WLAD, Washington Constitution Art. I, § 11, and Title VII. The AGO moved to dismiss Wittig's amended complaint. The trial court granted the AGO's motion and dismissed Wittig's amended complaint without prejudice.

Wittig then filed a second amended complaint against the AGO. Wittig stated that she applied for a religious exemption from the COVID-19 vaccine requirement which the AGO granted in November 2021. In a single paragraph, Wittig alleged:

> The sincerity of [her] religious belief preventing her from taking vaccines is demonstrated in part by the fact that [Wittig] has never had any vaccine in her adult life, including flu shots. Yet [Wittig] remains healthy at age 55. This is connected to [Wittig's] belief that God made her body a temple of the Holy Spirit and provided her with an immune system to protect and heal her body. [Wittig] believes that to take the COVID-19 vaccine would violate that belief. [Wittig's] daughter in 1998 was vaccinated for school at age eight, as required by her public school, without [Wittig] knowing then there was any legal option, and believes an adverse health condition was caused by said vaccine(s). [Wittig] raised her daughter in the church that [Wittig] attended for 30 years which emphasized the belief that our bodies belong to Christ, and in accordance with the scripture from Corinthians that her body is a temple of the Holy Spirit and neither [Wittig's] daughter nor the children of [Wittig's] daughter take vaccines.

Clerk's Papers (CP) at 84-85. Wittig continued:

> [Wittig's] belief that her body is a temple and that forbids vaccines comes from God, not from other sources, but [Wittig] believes that the sincerity and correctness of her belief is bolstered by her knowledge of people having adverse health effects

---

[3] Proclamation by Governor Jay Inslee, No. 21-14 (Wash. Aug. 9, 2021), https://governor.wa.gov/sites/default/files/proclamations/21-14%20-%20COVID-19%20Vax%20Washington%20%28tmp%29.pdf.

from the COVID-19 vaccine and by what occurred to [Wittig's] daughter. [Wittig] understood that COVID-19 vaccines were developed from or tested with aborted fetal tissue and this contributes to [Wittig's] belief that God does not want [Wittig] to put the substance that is the COVID-19 vaccine into her body. [Wittig] is sensitive to and allergic to other medications, skin creams, makeup, etc. which also bolsters her belief that God does not want her to violate keeping her body as a temple by keeping it free from foreign substances as much as possible. Only one of several COVID-19 vaccines had full approval from the USFDA, when [Wittig] was demanded to submit to one of several vaccines, which had only been under development for 11 months, and which are mRNA vaccines, a new development, including some that were only under emergency authorization; such a novel nature of the vaccine supported that it was not a substance God wanted injected into a holy temple. The fact that [Wittig] receives information educating her on what would be considered harmful to her "body as a temple of the Holy Spirit" does not mean that her opposition to the vaccine is not her religious belief.

CP at 85. She concluded:

[Wittig] avers that the statement provided to the Office of the Attorney General by [Wittig] in support of her exemption request based on her religious beliefs is attached, verbatim and is hereby incorporated by reference. Said religious beliefs were sincere and bona fide. It was provided to the Office of the Attorney General with a form provided by that office and duly submitted according to the procedure provided by the Office of the Attorney General to [Wittig]. The Office of the Attorney [G]eneral notified [Wittig] her request was granted.

CP at 85-86. Wittig then alleged that she requested to work remotely as an accommodation and that, at the time of her request, she was already performing the bulk of her job duties, including the essential functions of her job, remotely. According to Wittig, providing her with an accommodation would result in no undue hardship to the AGO. The AGO denied Wittig's request for an accommodation and terminated her employment.

Wittig claimed that the AGO's actions resulted in a violation of her rights under the WLAD, Washington Constitution, and Title VII. Wittig prayed for the following relief: damages for lost income and benefits, emotional distress, mental anguish, loss of enjoyment of life, and

other general damages, attorney fees, punitive damages, and "[f]or such other relief as allowed by law and equity, including reinstatement." CP at 92.

Wittig attached three documents to her second amended complaint. First, she attached what appears to be a letter from the AGO to Wittig stating that, while the AGO approved her request for exemption, the AGO was unable to accommodate her exemption. Second, Wittig attached what looks to be a letter from the AGO to Wittig discussing "guidelines for staff leaving AGO." CP at 99. Finally, Wittig attached a form provided by the AGO for requesting a religious exemption from the vaccination requirement. Wittig appears to have completed the form in September 2021.

In her religious exemption request to the AGO, Wittig asserted that she had "a sincerely held religious belief or religious conviction that prevents [her] from receiving the COVID-19 vaccine." CP at 94. In a section of the form asking Wittig to "describe 'how a COVID-19 vaccine conflicts with [her] sincerely held religious belief,'" Wittig stated, in relevant parts:

> I am writing to request my employer accommodate my sincerely held religious belief that prevents me from receiving any COVID related vaccine. I want to provide you with an understanding of my sincerely held religious belief against COVID related vaccinations, including the COVID 19 vaccines. The Bible is the foundation of my religious beliefs. In first Corinthians 6:19-20, we read: "Or do you not know that your body is the temple of the Holy Spirit within you, whom you have from God? You are not your own, for you were bought with a price. So glorify God in your body." From this I have come to understand and believe that God wants us to glorify Him with our bodies so He can use our bodies to serve as a home for His Spirit to specifically guide me in all of life's decisions. Injecting the COVID vaccine into my body is contrary to this core teaching that my body is the temple of the Holy Spirit. It is also contrary to the teaching of the Spirit who testifies within me. My study of God's word has now convinced me of the truth of this matter as a sincerely held belief.

CP at 96. She continued:

> Whether or not other believers or pastors adhere to this belief, or the Church I often attend does or does not adhere to this core teaching, is not relevant as the law only requires that I have such a sincerely held belief, not whether others or my church share or do not share that belief. My beliefs are not grounded in personal preferences, or worries about the health effects of the vaccine, or my views about the accepted claim that the vaccines are harmless to most people, or that I simply wish to avoid this vaccine. While they may be relevant, they are not the foundation or reason for my religious belief which, as I stated, is grounded in my deeply hel[d] belief and understanding of what God, the Almighty Creator requires of me and my body as His temple. My objections to this vaccine rest on fundamental and ultimate questions having to do with deep and imponderable matters pertaining to God's sovereign act of placing the Holy Spirit into my body upon conversion and my duty to follow that Spirit's individual leading that I should not receive the COVID vaccine injections in defiance of the Spirit's direction. The duties I owe my creator are only to be based on my individual conscience and I cannot yield that decision to other persons, even those of good will or medically trained. This is the nature of true belief. I am sure that you will agree that the employer has no superior ability or qualifications to spiritually discern this matter or to substitute its judgment for that of the Holy Spirit in considering this deep and imponderable matter. Indeed, my belief is not merely an isolated moral teaching, but is rather a part of my comprehensive system of beliefs about fundamental or ultimate matters as noted.

CP at 96.

The AGO moved to dismiss Wittig's second amended complaint under CR 12(b)(6), arguing that Wittig failed to state a claim. In its oral ruling, the trial court accepted the sincerity of Wittig's alleged religious belief "that her body is a temple and that the Holy Spirit has spoken to her through scripture and, perhaps, other means and that that is a religious belief." Rep. of Proc. (RP) (Feb. 9, 2024) at 34, 37. The trial court then focused on the question of whether Wittig's allegation sufficiently showed that her opposition to the vaccine derived from a religious belief and used *Africa v. Pennsylvania*, 662 F.2d 1025, 1032 (3rd Cir. 1981), as guidance in its inquiry. RP (Feb. 9, 2024) at 34-35.

The trial court then found:

> [Wittig's] specific allegations in this case do not appear to be premised on any specific teaching from her church or in the Bible, but rather appear to be primarily based upon the general assertions that could capture any kind of requirement.
>
> . . . .
>
> the objection to the employer's requirement appears to be primarily motivated by a personal and health-based and medical judgments.
>
> Put simply, on any conceivable set of facts consistent with the allegations, what [Wittig] alleges is not more than a generalized aversion. And the court finds that [Wittig's] case does not meet the standard of religiosity, which is step one in the three-part test both for [WLAD] and [Title VII].

RP (Feb. 9, 2024) at 37. The trial court found that the same religiosity test applied to Wittig's state constitutional claim and, thus, found that she also insufficiently alleged a constitutional claim. The trial court dismissed Wittig's second amended complaint with prejudice.

Wittig appeals.

ANALYSIS

A.      *The AGO Is Not Estopped from Raising Arguments Related to Wittig's Complaint in Its Motion To Dismiss*

Wittig appears to argue that the AGO is estopped from litigating the issue of whether her religious beliefs conflicted with the COVID-19 vaccine because the AGO granted Wittig's request for a religious exemption. Wittig also appears to argue that we should apply the principle of equitable estoppel to dismiss the AGO's arguments related to the sufficiency of Wittig's pleading. The AGO responds that, although it "accepted [Wittig's] objections to vaccination [Wittig] asserted in her exemption request for the purpose of considering an accommodation," Wittig is not relieved from pleading and proving the prima facie elements of

7

her claims. Br. of Resp't at 30-31. We agree with the AGO that, at the pleading stage, Wittig is not relieved from her burden.

Generally, to commence a civil action, a plaintiff must serve a copy of a summons and complaint. CR 3(a), 4.1.[4] A pleading, including the original claim, must contain "(1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which the pleader deems the pleader is entitled." CR 8(a); *see also Adams v. King County*, 164 Wn.2d 640, 657, 192 P.3d 891 (2008). "The complaint simply must give sufficient notice to the defendant of the nature of the claim being brought." *Adams*, 154 Wn.2d at 657.

Equitable estoppel "prevents a party from taking a position inconsistent with a previous one where inequitable consequences would result to a party who has justifiably and in good faith relied thereon." *Sloma v. Dep't of Ret. Sys.*, 12 Wn. App. 2d 602, 621, 459 P.3d 396 (2020) (quoting *Byrd v. Pierce County*, 5 Wn. App. 2d 249, 258, 425 P.3d 948 (2018)). As our courts have described, "equitable estoppel is not available for use as a 'sword,' or cause of action by plaintiffs" but "properly used as a 'shield,' or a defense." *Id*. This principle is disfavored as applied against the government and so, when asserting equitable estoppel against the government, the asserting party must show the following by clear, cogent, and convincing evidence:

> '(1) a statement, admission, or act by the party to be estopped, which is inconsistent with its later claims, (2) the asserting party acted in reliance upon the statement or action, (3) injury would result to the asserting party if the other party were allowed

---

[4] This applies with the exception of an action authorized under RCW Chapter 26.09 which covers marital dissolution proceedings.

to repudiate its prior statement or action, (4) estoppel is necessary to prevent a manifest injustice, and (5) estoppel will not impair governmental functions.'

*Id.*

 (internal quotation marks omitted) (quoting *Silverstreak, Inc. v. Dep't of Labor & Indus.*, 159 Wn.2d 868, 887, 154 P.3d 891 (2007)).

None of the authorities Wittig cites in support of her argument persuade us that the principle of equitable estoppel applies at the pleading stage or relieves Wittig of her burden at this stage in the case. None of the cases cited involved an appeal following a motion to dismiss at the pleading stage, before parties have settled into their respective positions and, thereby foreclosing other positions in reliance on the opponents' representations and before there is some evidence in the case, not merely allegations. *See Kramarevcky v. Dep't of Soc. & Health Servs.*, 122 Wn.2d 738, 742, 863 P.2d 535 (1993) (involving a direct appeal following an administrative hearing); *Robinson v. Seattle*, 119 Wn.2d 34, 46, 830 P.2d 318 (1992) (reviewing a partial summary judgment order); and *Wilson v. Westinghouse Elec. Corp.*, 85 Wn.2d 78, 82, 530 P.2d 298 (1975) (involving an appeal sometime after the trial court made certain findings of fact).

Even if the AGO granted Wittig's religious exemption request, that fact alone does not mean that granting Wittig's request was a binding litigation position such that the AGO should be estopped from arguing against the legitimacy of her request at the pleading stage. The AGO could have had other reasons for granting Wittig's request that are unrelated to the legitimacy of her request. This is especially possible considering the timing of granting the request with the COVID-19 pandemic. Moreover, there are no allegations demonstrating that applying estoppel at this stage would be "necessary to prevent a manifest injustice" or would not impair any

9

government functions. *Sloma*, 12 Wn. App. 2d at 621 (quoting *Silverstreak*, 159 Wn.2d at 887).

Accordingly, we decline to apply equitable estoppel against the AGO at the pleading stage and,

therefore, consider the AGO's arguments about the sufficiency of Wittig's pleadings.

B.      *Wittig Sufficiently Pleaded Claims in Her Second Amended Complaint So as To Survive a CR 12(b)(6) Motion To Dismiss*

Wittig argues that her second amended complaint sufficiently pleads her claims under the

WLAD and Title VII.[5]  The AGO contends that Wittig's second amended complaint was

insufficient because it failed to show that the vaccination requirement conflicted with Wittig's

religious beliefs.  We agree with Wittig.

   i. *Legal Principles for CR 12(b)(6) Motions*

We review a trial court's decision to dismiss a complaint for failing to "state a claim upon

which relief can be granted" de novo.  CR 12(b)(6); *Wiklem v. City of Camas*, 31 Wn. App. 2d

575, 584, 551 P.3d 1067 (2024), *review denied* 4 Wn.3d 1002 (2025).  Dismissal based upon

failure to state a claim is appropriate only if we conclude, beyond a reasonable doubt, that a

plaintiff cannot prove any set of facts consistent with the complaint which would justify

recovery.  *Byrd*, 5 Wn. App. 2d at 256-57.

---

[5] While Wittig appears to argue that the Washington constitutional violation of art. I, sec. 11, is a separately-raised cause of action, this is not apparent from the face of her second amended complaint and it is not clear from her briefing that the alleged constitutional violation here is separate from the alleged WLAD violation.  To the extent that Wittig raises the alleged constitutional violation as a wholly separate cause of action, such is insufficiently raised in the trial court, briefed, and argued to allow our review and, thus, we do not further consider it. "'Parties raising constitutional issues must present considered arguments to this court.' Thus, a party's passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Mudarri v. State*, 147 Wn. App. 590, 616, 196 P.3d 153 (2008) (quoting *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992) (internal citations omitted).

Our state is a notice pleading state, "meaning that a simple, concise statement of the claim and relief sought is sufficient." *West v. City of Tacoma*, 12 Wn. App. 2d 45, 63-64, 456 P.3d 894 (2020); CR 8(a). We construe pleadings liberally so as to allow for a decision on the merits. *Id.* at 64. A complaint is insufficient if it fails to give the opposing party fair notice of the claim asserted. *Id.*

We assume the truth of the allegations contained in the complaint and may consider hypothetical facts beyond the record. *Wiklem*, 31 Wn. App. 2d at 584. "'[A]ny hypothetical situation conceivably raised by the complaint defeats a CR 12(b)(6) motion if it is legally sufficient to support plaintiff's claim.'" *Byrd*, 5 Wn. App. 2d at 257 (quoting *Bravo v. Dolsen Cos.*, 125 Wn.2d 745, 750, 888 P.2d 147 (1995)). We grant a motion to dismiss "'sparingly and with care' and, as a practical matter, 'only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.'" *Kinney v. Cook*, 159 Wn.2d 837, 842, 154 P.3d 206 (2007) (quoting *Hoffer v. State*, 110 Wn.2d 415, 420, 775 P.2d 781 (1988)) (internal quotation marks omitted).

ii. *Elements of the Claims*

In her second amended complaint, Wittig raises two causes of action: one under the WLAD and article I, section 11 of the state constitution,[6] and the second under Title VII. The AGO argues that Wittig failed to sufficiently allege her claims because she failed to plead a religious belief in conflict with the COVID-19 vaccination mandate.

---

[6] *See* footnote 4, supra.

Under article I, section 11 of the Washington State Constitution, all individuals are guaranteed "[a]bsolute freedom of conscience in all matters of religious sentiment, belief and worship" and "no one shall be molested or disturbed in person or property on account of religion; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace and safety of the state."

WLAD and Title VII protect individuals from being discriminated against by their employer because of the individual's "creed" or "religion," among other things.  *Suarez v. State*, 3 Wn.3d 4040, 416, 552 P.3d 786 (2024); 42 U.S.C. § 2000e-2(a)(1); RCW 49.60.180.  Title VII explicitly requires employers to reasonably accommodate an employee's religious practices, and Washington courts have interpreted the WLAD to impose the same duty on employers.  *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 496, 325 P.3d 193 (2014).  Despite the two statutes being distinct and almost all of WLAD's prohibitions predating Title VII, "Washington courts still look to federal case law interpreting [the statute] to guide our interpretation of the WLAD" in the context of religious discrimination.  *Id.* at 491.

To sufficiently plead a failure to accommodate religious practices claim under both WLAD and Title VII, a plaintiff must allege: "(1) he or she had a bona fide religious belief, the practice of which conflicted with employment duties; (2) he or she informed the employer of the beliefs and the conflict; and (3) the employer responded by subjecting the employee to threatened or actual discriminatory treatment."  *Id.* at 501.  Title VII's definition of "religion" is broad and includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000(e)(j).

The issue raised by the parties here is whether Wittig has sufficiently alleged a religious belief that is in conflict with the COVID-19 vaccination requirement. When considering claims where a party must demonstrate a sincerely held religious conviction, courts do not inquire into the truth or reasonableness of the party's convictions or beliefs. *See Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1223 (9th. Cir. 2023) (declining to "interrogate the reasonableness of [an appellant's] beliefs" for a Title VII claim); *State v. Balzer*, 91 Wn. App. 44, 54, 954 P.2d 931 (1998) (addressing a state free religious exercise claim). As the United States Supreme Court articulated in *United States v. Seeger*:

> The validity of what [one] believes cannot be questioned. Some theologians, and indeed some examiners, might be tempted to question the existence of the registrant's 'Supreme Being' or the truth of his concepts. But these are inquiries foreclosed to Government. As Mr. Justice Douglas stated in *United States v. Ballard*, 322 U.S. 78, 86, 64 S. Ct. 882, 886, 88 L. Ed. 1148 (1944): 'Men may believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs. Religious experiences which are as real as life to some may be incomprehensible to others.' Local boards and courts in this sense are not free to reject beliefs because they consider them 'incomprehensible.' Their task is to decide *whether the beliefs professed by a registrant are sincerely held* and *whether they are, in his own scheme of things, religious.*
>
> But we hasten to emphasize that while the 'truth' of a belief is not open to question, there remains the significant question whether it is 'truly held.' This is the threshold question of sincerity which must resolved in every case.

380 U.S. 163, 184-85, 85 S. Ct. 850, 13 L. Ed. 2d 733 (1965) (emphasis added). In evaluating religiosity for failure to accommodate claims, courts "focus our inquiry on whether [the appellant] has alleged an actual conflict" with a religious belief, which the Ninth Circuit has described as a "fairly minimal" burden. *Bolden-Hardge*, 63 F.4th at 1223.

The AGO asks us to look to the "*Africa* test" from the Third Circuit to determine whether Wittig's objections to the COVID-19 vaccine were religious in nature. Br. of Resp't at 25.

*Africa* involved the question whether an organization, the MOVE organization, was a "'religion,'" in the sense that that term is used in the first amendment." 662 F.2d at 1032-33 (citing *Malnak v. Yogi*, 592 F.2d 197, 204, 210-13 (3d Cir. 1979) (concurring opinion)). The Third Circuit used three "'useful indicia'" adopted by a prior case from the same circuit, to determine whether the alleged set of beliefs, regardless of whether they were sincerely held, established that MOVE was a religion. *Id.* at 1031, 1033-36 (quoting *Malnak*, 592 F. 2d at 208 (concurring opinion)). The Third Circuit described the three indicia accordingly:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

*Id.* at 1032.

While the AGO characterizes these three indicia as a "test," we decline to follow suit. Instead, per the Third Circuit's own language, *Africa* sets out certain qualities that may indicate whether something falls within the definition of a religion; the opinion does not present such three indicia as elements or requirements to establish religiosity. *See id.* at 1032, 1035 (referring to the three as "indicia" or "factors"). As the Third Circuit noted, the prior case law relied on by the *Africa* court in presenting these three indicators:

> did not purport to have isolated the only possible factors that could be used to "test" for the presence of a religion. It recognized that "(f)lexibility and careful consideration of each belief system are needed." Still, the opinion stressed that "it is important to have some objective guidelines in order to avoid ad hoc justice."

*Id.* at 1032, n.13 (quoting *Malnak*, 592 F.2d at 210 (concurring opinion)).

Despite the AGO contending that *Africa* is instructive here, Africa did not involve determining whether an individual belief or collection of beliefs, linked to a religion, are

religious in nature. *Africa*'s three indicia provide a framework for "determin[ing] the existence of a religion." *Id.* at 1032. Instead, our task in evaluating individual beliefs is "to decide whether the beliefs professed . . . are sincerely held and whether they are, in [their] own scheme of things, religious." *Seeger*, 380 U.S. 163 at 185.

Here, Wittig's second amended complaint contained multiple pages, which also included the form she submitted to the AGO when she sought her exemption, describing her allegations related to the first element of her claims—whether she had a bona fide religious belief, the practice of which conflicted with employment duties. When considering this question, because this is at the pleading stage, we must assume the truth of facts in the second amended complaint and hypothetical facts beyond the record. *Wiklem*, 31 Wn. App. 2d at 584.

In the second amended complaint, Wittig identified and discussed more than one religious belief prompting her to assert that the vaccine requirement conflicted with her beliefs. Wittig alleged The Bible was "the foundation of [her] religious beliefs." CP at 96. Wittig referenced I Corinthians 6:19-20, "Or do you not know that your body is the temple of the Holy Spirit within you, whom you have from God? You are not your own, for you were bought with a price. So glorify God in your body." CP at 96. Wittig sincerely believes that "God wants us to glorify Him with our bodies so He can use our bodies to serve as a home for His Spirit to specifically guide me in all of life's decisions." CP at 96. Wittig explained that her study of God's word convinced her that putting the COVID vaccine in her body would be contrary to this core teaching that her body is a temple of the Holy Spirit and contrary to "the teaching of the Spirit who testifies within me. My study of God's word [in The Bible] has now convinced me of the truth of this matter." CP at 96.

Wittig described her objection to the vaccine as resting "on fundamental and ultimate questions having to do with deep and imponderable matters pertaining to God's sovereign act of placing the Holy Spirit into [my] body upon conversion and my duty to follow that Spirit's individual leading that I should not receive the COVID vaccine injections in defiance of the Spirit's direction. The duties I owe my creator are only to be based on my individual conscience and I cannot yield that decision to other persons, even those of good will or medically trained." CP at 96.

In support of her religious beliefs, she explained that God "provided her with an immune system to protect and heal her body" and expressly stated that she believed "that to take the COVID-19 vaccine would violate that belief." CP at 84. Wittig described the sincerity of her beliefs by stating that she had never taken a vaccine in her adult life and, yet, remained healthy.

While Wittig mentioned certain secular and health concerns associated with the vaccines, she related many of these assertions to conceivably religious bases as well. For example, Wittig described raising her daughter in Wittig's same church and, when Wittig's daughter was required to receive a vaccine in public school, her daughter had an adverse health condition that Wittig "believes was caused by said vaccine(s)." CP at 84. Wittig described this experience, as well as knowing others who had adverse health effects, as bolstering "the sincerity and correctness" of her belief that her body is a temple that forbids vaccines. CP at 85. She additionally alleged that her own sensitivity and allergies related to "other medications, skin creams, [and] makeup" bolstered her belief that God wanted her to keep her body "as a temple by keeping it free from foreign substances as much as possible." CP at 85.

Although these statements plausibly contained non-religious bases for Wittig to have a conflict with the vaccine mandate, Wittig averred repeatedly that her opposition to the vaccine stemmed from religious beliefs. *See* CP at 85 ("The fact that [Wittig] receives information educating her on what would be considered harmful to her 'body as a temple of the Holy Spirit' does not mean that her opposition to the vaccine is not her religious belief."); CP at 85 ("[Wittig's] belief that her body is a temple and [one] that forbids vaccines comes from God, not from other sources."); CP at 96 ("My beliefs are not grounded in personal preferences, or worries about the health effects of the vaccine, or my views about the accepted claim that the vaccines are harmless to most people, or that I simply wish to avoid this vaccine. While they may be relevant, they are not the foundation or reason for my religious belief."). Even some of Wittig's arguably secular or non-religious reasons were equally conceivably religious.

The AGO contends that, in addition to Wittig raising several secular concerns, some of Wittig's allegations are additional and new allegations, separate from those Wittig described in her form to the AGO. The AGO argues that these additional or new allegations fail at establishing a WLAD or Title VII claim because "Wittig did not inform the AGO of them." Br. of Resp't at 42, n.17. However, as explained below, we read those allegations contained in Wittig's second amended complaint not as raising new and separate conflicts with her religious beliefs, but, instead, explaining or elaborating on the two religious beliefs she identified in the AGO's form: that "injecting the COVID vaccine into my body is contrary to this core teaching that my body is the temple of the Holy Spirit [and] also contrary to the teaching of the Spirit who testifies within me." CP at 96.

The AGO relies on a slew of noncontrolling, federal cases to support its assertion that Wittig's alleged facts were insufficient to establish a "*religious* conflict with vaccination." Br. of Resp't at 30; *see also* Resp't's Statements of Add'l Auths.

In particular, the AGO and our colleague in the dissent rely on *Detwiler v. Mid Columbia Med. Ctr.*, ___ F.4d ___, No. 23-3710, 2025 WL 2700000 (9th Cir. 2025). *Detwiler* concerned Detwiler's objections to antigen nasal swab testing based both in "medical and/or scientific judgment" as well as religious judgment tied to her belief that her body was a temple of the Holy Spirit. *Id.* at *4. Detwiler asserted that she confirmed her opposition to the testing through personal prayer. *Id*. The Ninth Circuit concluded that Detwiler failed to plead a prima facie case of religious discrimination because it found that Detwiler's objection to the testing relied on a secular judgment that the testing had a carcinogenic, and therefore harmful, component. *Id.* at *7. The court concluded, "[the] belief is personal and secular, premised on her interpretation of medical research. In essence, Detwiler labels a personal judgment based on science as a direct product of her general religious tenet. Yet, her alarm about the test swab is far too attenuated from the broad principle to treat the two as part of a single belief." *Id*.

Contrary here, Wittig does not invoke a broad religious tenet and then fail to plead facts connecting her religion to her specific objection. In fact, Wittig clearly alleges that her belief that taking a vaccine would be contrary to her religious beliefs is a conviction she had exercised throughout her life. Wittig's examples are the manifestation of her truly held religious beliefs. To use the parlance of *Seeger*, even if incomprehensible to some, it is real as life to Wittig. Here, at the pleading stage, use of words and logic to explain religious beliefs and practices that Wittig cannot necessarily prove is not a bar. To hold otherwise at this stage of the proceeding

18

where we construe pleadings liberally and assume the truth of the alleged facts, including considering hypothetical facts beyond the record, would amount to evaluating the truth of Wittig's assertion that abstaining from vaccines is part of her religious beliefs and practices. Following *Seeger* precludes this.

Like with *Detwiler*, the alleged beliefs and facts at issue in many of the AGO's relied-upon cases are distinguishable from those pleaded by Wittig.[7]

---

[7] *See Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 492 (3d Cir. 2017) (involving beliefs that one should not harm one's own body and that the flu vaccine "may do more harm than good"); *Gatto v. Johnson & Johnson Srvcs., Inc.*, No. 24-1992, 2025 WL 816732, at *1, *3 (3d Cir. Mar. 14, 2025) (court order) (involving an exemption request from nasal testing based on the testing requiring "insertion of foreign matter into [the plaintiff's] body"); *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 463 (M.D. Pa. 2022) (court order) (involving a belief that the plaintiff has been given the right by God to make their own choices regarding what is good or bad for them); *Chinnery v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:23-cv-01110, 2024 WL 3152348, at *5 (E.D. Va. June 24, 2024) (court order), *vacated and remanded*, No. 24-1697, 2025 WL 1733959 (4th Cir. June 23, 2025) (unpublished) (concerning a plaintiff who failed to explain how she distinguished between taking the vaccine or consuming food in practicing her belief that she must keep her body pure from "any foreign substance"); *Moli v. King County*, No. 2:23-cv-00823-RSL, 2024 WL 1860184, at *2 (W.D. Wash. Apr. 29, 2024) (court order) (involving a plaintiff who linked their opposition of the COVID-19 vaccination to a belief that the vaccine would desecrate or defile their temple or condemn their spirit and soul to hell, but the plaintiff did not oppose all immunizations); *Detwiler v. Mid-Columbia Med. Ctr.*, No. 3:22-cv-01306-JR, 2023 WL 7221458 (D. Or. Sept. 23, 2025) (court order) (involving a plaintiff's objections to antigen testing based on her belief that her body was a temple of the Holy Spirit with confirmation of the plaintiff's opposition to testing tied to personal prayer); *Medrano v. Kaiser Permanente*, No. 8:23-cv-02501-DOC-ADSx, 2024 WL 3383704, at *4 (C.D. Cal. Jul. 10, 2024) (court order) (concerning opposition to a vaccine because the vaccine does not give the plaintiff peace); and *Racz v. King County*, noted at 34 Wn. App. 2d 1106, 2025 WL 2029151, at *1. ("exemption request stated only that vaccines were not 'necessary' as a 'professing Christian/born free American to be healthy.'").

Another case the AGO relies on appears to no longer support the AGO's asserted position.[8] And, as for the rest, we find them otherwise unpersuasive.[9]

Assuming the truth of Wittig's allegations here, we cannot say that this is "'the unusual case'" where it appears beyond a reasonable doubt that Wittig cannot prove any set of facts showing a religious belief in conflict with her former employer's vaccination requirement. *Kinney*, 159 Wn.2d 837 (quoting *Hoffer*, 110 Wn.2d at 420). Based on Wittig's allegations in her second amended complaint, Wittig conceivably alleged that her bona fide religious beliefs were in conflict with the AGO's vaccination mandate. We do not conclude beyond a reasonable

---

[8] *See* Br. of Resp't at 29 (citing *Cox v. Valley Health Sys.*, No. 5:23-cv-00051, 2024 WL 3236414 (W.D. Va. June 28, 2024) (court order), for an example of a court holding conscious-based vaccine objections failing to support the religiosity element); *but see Cox v. Valley Health Sys.*, No. 5:23-cv-00051, 2025 WL 711981, at *2-3 (W.D. Va. Mar. 5, 2025) (court order) (on reconsideration, reconsidering the previously dismissed claims, declining to apply the indicia from *Africa*, and holding that the plaintiff's beliefs were religious in nature).

[9] *See e.g. Ellison v. Inova Health Care Srvcs.*, 692 F. Supp. 3d 548, 557, n.6, 558-59 (E.D. Va. Sept. 14, 2023) (court order) (involving both parties not objecting to applying the indicia from *Africa* and the court finding one plaintiff's refusal to take vaccines was only based on "concerns of vaccine safety" while the other two plaintiffs' beliefs would amount to a "blanket privilege" undermining a system of ordered liberty); *McDowell v. Bayhealth Med. Ctr., Inc.*, No. 24-1157, 2024 WL 4799870, at *2 (3d Cir. Nov. 15, 2024) (plurality) (holding that plaintiffs did not plausibly allege a sufficient nexus between their religious beliefs that their bodies are God's temple and receiving the COVID-19 vaccine would violate that belief and their objection to the vaccine); *Cruz v. Kaiser Found. Hosps.*, 773 F. Supp. 3d 1045, 1052 (2025) (court order) (finding that plaintiffs insufficiently pleaded bona fide religious beliefs in conflict with a COVID-19 vaccine requirement when one plaintiff did not explain how her belief "in Jesus Christ as her Lord and savior" conflicts with the vaccine, another plaintiff does not explain why his belief that his body is a temple of the Holy Spirit prohibits receiving the vaccine, and the third fails similarly to explain how her belief that she must keep her body pure conflicts with the vaccine); *Fisher v. Dep't of Fin. Insts.*, No. C22-5991 TSZ, 2025 WL 1434366 (W.D. Wash. May 19, 2025) (court order).

doubt that Wittig cannot prove any set of facts consistent with the second amended complaint that would justify recovery. *Byrd*, 5 Wn. App. 2d at 256-57.

We take no position whether Wittig's claims will succeed ultimately. Nor do we engage in the trier of fact's responsibilities of determining whether Wittig truly had a bona fide religious belief in conflict with the vaccine mandate. But, because we are at the pleading stage, Wittig's claims under the WLAD and Title VII do not clearly present an "insuperable bar to relief" and, thus, should have survived a motion to dismiss challenging the religiosity of her claims. *See Kinney*, 159 Wn.2d at 842. Accordingly, we hold that Wittig's second amended complaint sufficiently pleaded the required elements for both claims.

CONCLUSION

We reverse the dismissal of Wittig's second amended complaint and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Che, J.

I concur:

_____
Veljacic, A.C.J.

21

PRICE, J. (Dissenting) — Employment cases involving religious exemptions present unique challenges for courts. "On the one hand, courts have long safeguarded the rights of religious believers even when their beliefs are not mainstream, traditional, or even internally consistent. On the other hand, legislature crafted religious discrimination statutes of limited scope, striking a balance between individual entitlements and the reality of the workplace." *Detwiler v. Mid-Columbia Med. Ctr.*, __ F.4d __, 2025 WL 2700000, at *2 (9th Cir. 2025)[10]. Finding the line between the religious and the secular has been a struggle. *Id.*

Given the difficulty of balancing these interests, I can appreciate the court's decision today that Ms. Wittig has done enough to meet the religiosity requirement of her claims at this early pleading stage. But I disagree.

As more COVID-19 vaccine and religious objections cases work their way through the courts, the case law is developing. To be sure, courts have applied varying degrees of scrutiny to religious belief claims. But a substantial body of cases would likely find that Wittig's allegations are insufficient to state a claim—these cases essentially hold that an objection to the COVID-19 vaccine rooted in "my body is a temple" is a personal medical belief cloaked in religion as opposed to a bona fide religious belief. *See, e.g., Petermann v. Aspirus, Inc.*, No. 22-cv-332-jdp, 2023 WL 2662899, at *2 (W.D. Wis. March 28, 2023)(court order) (For religious objection cases, "[t]he important question isn't whether an employee has a religious belief not to mistreat her body; the question is whether the employee's belief that the vaccine qualifies as mistreatment is itself based in religion."); *Detwiler v. Mid-Columbia Med. Ctr.*, No. 3:22-cv-01306-JR, 2023 WL 7221458, at

---

[10] https://cdn.ca9.uscourts.gov/datastore/opinions/2025/09/23/23-3710.pdf

*1, *5 (D. Or. Sept. 13, 2023) (court order) (where plaintiff believed her "body is a temple of the Holy Spirit" and "sincerely believe[d] she [had] a religious duty to avoid defiling her temple," the court observed that "virtually every court examining the precise belief invoked by plaintiff has held that Title VII's protections do not apply"), *adopted*, 2023 WL 7220734 (D. Or. Nov. 2, 2023), *aff'd*, __ F.4d __, 2025 WL 2700000, at *2 (9th Cir. 2025).  The court today lists many of these cases and labels them factually distinguishable and "unpersuasive."  Majority at 19-20  The lesson I draw from these cases is that they largely find the proper balance to these challenging questions, even though the correct line between the religious and the secular defies precision.

I find particularly persuasive the recent Ninth Circuit decision in *Detwiler*.  There, the court laid out general principles to guide the decision.  Initially, it is important to recognize that the courts are in no position to second-guess an individual's personal religious beliefs.

> To be sure, courts may not substitute their own judgment for that of the believer's. . . . Nor can they adjudge the reasonableness of a belief under the guise of purely legal assessment of the sufficiency of the claim.  Whether a belief is religious should not "turn upon a judicial perception of the particular belief  or practice in question; religious beliefs need not be acceptable, logical, or comprehensible to others in order to merit First Amendment protection."  So too with Title VII protections.

2025 WL 2700000, at *6 (internal citations omitted) (quoting *Thomas v. Rev. Bd. or Ind. Emp. Sec. Div.*, 450 U.S. 707, 714, 101 S. Ct. 1425, 67 L. Ed. 2d 624 (1981)).

But there are limits.  *Id.* at *2 ("Some sacrifice of total autonomy is a natural consequence of gainful employment.").  As *Detwiler* explained, the plaintiff must plead a "sufficient nexus" between a requested exemption and a "truly religious principle." *Id.* at *6.

> Invocations of broad, religious tenets cannot, on their own, convert a secular preference into a religious conviction.  To hold otherwise would destroy the

pleading standard for religious discrimination claims, allowing complainants to invoke magic words and survive a dismissal without stating a prima facie case.

*Id.* And " 'it takes more than a generalized aversion to harming the body to nudge a practice over the line from medical to religious.' " *Id.* at *8 (quoting *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, No. 21-cv-4024, 2021 WL 4399672, at *7 (E.D. Pa. Sept. 27, 2021)).

In deciding that Ms. Wittig could not meet the religiosity requirement, the superior court appeared to follow the rationale found in these cases. The superior court began by recognizing that it should not question the veracity of Ms. Wittig's beliefs, stating:

> Here the court readily accepts that the plaintiff has a bona fide religious belief, that the plaintiff has a bona fide belief that her body is a temple of the Holy Spirit.

Verbatim Rep. of Proc. (VRP) at 37. But then the superior court proceeded to evaluate whether the requested exemption was more connected to secular medical judgments or to those religious beliefs.

> However, the plaintiff's specific allegations in this case do not appear to be premised on any specific teaching from her church or in the Bible, but rather appear to be primarily based upon the general assertions that could capture any kind of requirement.

> [P]laintiff highlights a number of scenarios and ties them back to medical concerns when she references her specific conditions and indicates that it bolsters her belief that God does not want her to violate keeping her body as a temple by keeping it free from foreign substances "as much as possible."

> Similar to the *Detwiler* case and every other case I've looked at, this is a scenario where the use of religious vocabulary does not turn what appears from the allegations to be a secular determination based upon medical judgment that then is consistent with the concept and the belief of the body being a temple. But nonetheless, the objection to the employer's requirement appears to be primarily motivated by a personal and health-based and medical judgments.

> Put simply, on any conceivable set of facts consistent with the allegations, what plaintiff alleges is not more than a generalized aversion. . . .

No. 60100-1-II

VRP at 37-38. From my review of the record and the current case law, the superior court navigated these challenging issues and arrived at the correct destination.

Respectfully, I dissent.

_____
    PRICE, J.